(22 App. Div. 380.)

TOMPKINS v. HARTFORD FIRE INS. CO.

(Supreme Court, Appellate Division, Second Department.   November 30, 1897.)

1. INSURANCE—CONDITION OF POLICY—WAIVER.
    In April, 1895, defendant issued a standard policy of insurance covering plaintiff's horses, oxen, cows, young cattle, and sheep. The policy provided that it should be void if the property should become incumbered by a chattel mortgage, and that no waiver of any provision should exist or be claimed unless written on or attached to the policy. Subsequently plaintiff gave a mortgage on cows, sheep, and lambs, and soon thereafter notified defendant's agent, and twice requested him to see to the policy, and have it all right, which he promised, but neglected, to do. Plaintiff retained the policy all this time. On November 24, 1896, a fire destroyed certain of the animals. *Held* that, even assuming that the agent stood

in the place of the company, the facts constituted neither waiver nor estoppel.

**2. SAME—DIVISIBLE POLICY.**

A "floating policy" of insurance, covering horses, oxen, young cattle, and sheep, was issued for the gross sum of $2,400, and provided for a maximum valuation, in case of loss, for the animals of each class separately. It also provided that it should be entirely void if the property became mortgaged. At the time of a loss by fire, some, but not all, of the animals were mortgaged. *Held*, that the policy was divisible, and that a recovery might be had for those destroyed which were not in the mortgage.

**3. SAME—EXTINGUISHMENT AND REVIVAL OF POLICY.**

Though a floating or open policy of fire insurance is avoided by a mortgage given in violation of its terms, yet an extinguishment of the mortgage before a loss revives the policy.

Appeal from special term.

Action by Enoch Tompkins against the Hartford Fire Insurance Company. From a judgment after trial without a jury, defendant appeals. Affirmed on conditions.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Thos. S. Jones, for appellant.

W. Farrington, for respondent.

GOODRICH, P. J. The defendant, a Connecticut corporation, in April, 1895, issued a standard policy of insurance, covering plaintiff's horses, oxen, young cattle, and sheep, in the town of Washington, Dutchess county, in the sum of $2,400, fixing a valuation on each class of animals. A fire occurred on November 24, 1895, by which 36 cows, 2 horses, 1 bull, and 1 calf were destroyed. The company defends on the grounds that the policy was forfeited by the giving of chattel mortgages on the property, and the fact that a waiver was not indorsed on or added to the policy. The plaintiff, in October, 1895, gave a mortgage on cows and sheep, to secure a debt owing by him. No notice of this was given to the defendant. The plaintiff afterwards gave another mortgage on cows, sheep, and lambs to the same creditor. This mortgage was given in place of the first. The policy contained the following provisions:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if the subject of insurance be personal property, and be or become incumbered by a chattel mortgage."

"No officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy except as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and, as to such provisions and conditions, no officer, agent, or representative shall have power or be deemed or held to have waive [sic] such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto; nor shall any privilege or permission affecting the insurance upon this policy exist or be claimed by the insured unless so written or attached."

There was evidence that in July, a few days after the second mortgage was given, the plaintiff saw Mr. Thompson, the defendant's agent, and notified him of the giving of the mortgage, and requested him to see to the policy, and have it all right; the agent said he would do it, took from his pocket a piece of paper, and wrote something on it, put it in his pocket, and said he would attend to it; that a few

days later the plaintiff again met the agent, and asked him if he had attended to the matter, and the agent said that he had not, but would do so right away,—the next day. During all this time the policy was in the possession of the plaintiff. The evidence as to the power of the agent Thompson is not very full, but he appears to have been one of the firm of R. R. Thompson & Son, who countersigned the policy, which contained this clause:

"This policy shall not be valid until countersigned by the duly-authorized agent of the company at Amenia, N. Y. Countersigned by R. R. Thompson & Son, Agents."

R. R. Thompson died before the trial, but his son testified that the firm was agent for the defendant in soliciting and writing policies of insurance, made indorsements on the policies, received premiums, determined how much insurance to take on property, and that policies were signed by the company, with blanks for the firm to sign or countersign when used. Assuming, therefore, as no point was made on the trial, that the agents stood in the place of the company, we are to decide whether the facts constituted either a waiver or an estoppel.

In Whited v. Insurance Co., 76 N. Y. 415, the policy had been issued and renewed three times. Between the second and third renewals the assured informed the agent that he had sold the property, and that his interest was that of a mortgagee. The agent said that he would make it all right, and thereupon gave the third renewal. The policy provided that, if the property should be sold or the interest of the assured become that of a mortgagee, then the policy should become void. No entry of the fact was made upon the policy by the company or the agent. The court held that the agent was the agent of the company, for whose acts it was bound, and that there was a valid waiver of the conditions of the policy, and that it remained in force for another term, insuring plaintiff's interest as mortgagee. The court (Folger, J., writing the opinion) said:

"The case, then, is that of the holder of a policy asking for a renewal of it, and making known to the agent of the insurer the facts which have made, or will make, a breach of some of the conditions in it, and thereupon receiving from that agent a written renewal certificate, after payment and receipt of the premium, and having from him a promise that he would 'make it all right.' The powers of the agent were such as that the transaction with him was the same as if done with the defendant. It is bound as fully as if it were so. There was thus a perfect waiver of those conditions of the policy."

But there is a difference between the Whited Case and the one at bar. That was a transaction which occurred at the time of effecting the renewal of the insurance, and the principles which would govern the issuing of an original policy control the renewal. The court held that it was settled by the verdict that there was a parol waiver of the condition, and a parol consent to keep on foot the insurance of the plaintiff in his new status of mortgagee.

In Allen v. Insurance Co., 125 N. Y. 6, 25 N. E. 309, the court held that policies of insurance form no exception to the rule that parties are bound by the terms of their contracts, and that such contracts will be enforced according to the—

"Expressed intention and the evident understanding of the parties. Every provision, in the absence of fraud and of conditions immoral in the eye of the law, will be presumed to be material to the obligations assumed; and, when parties enter into contracts which depend for their validity and enforcement upon the fulfillment of prescribed conditions, they will be held to the exact nature of their engagement. They are presumed to intend the consequences of their acts, and it will afford no excuse to them that they mistook the law of the case, or that, through inadvertence, the conditions and possible consequences were unnoticed. * * * The assent of the plaintiff to this provision is conclusively presumed from his acceptance of the policy. In this respect he voluntarily fettered himself, and submitted to the defendant's conditional acceptance of the risks proposed."

The court of appeals in many cases has enforced the provision as to forfeiture of similar policies. In O'Brien v. Insurance Co., 134 N. Y. 28, 31 N. E. 265, the breach resulted from the premises becoming vacant and thereafter being burned. The general agent was duly informed of the fact of vacancy, and was asked how it would be if the building burned; and the agent said that it would be all right, but made no entry in the policy. It was held that this was not a waiver; that the stipulation as to occupancy was an express warranty, and, not having been performed or waived, the policy was void.

In Moore v. Insurance Co., 141 N. Y. 219, 36 N. E. 191, a foreclosure action was commenced, but three days before the day fixed for a sale of the premises the building was burned. Before the commencement of the suit, the plaintiffs informed the authorized agent of the company which had issued the policy of their intention to sue, and he agreed that such proceedings might be commenced without injuring the plaintiffs' rights under the policy, but no indorsement was made upon the policy. The court held as follows:

"The use of the standard policy was compelled by legislative enactment to remedy existing evils, and, among others, to protect insurance companies from the perils of alleged parol waivers by their local agents. Every person who now enters into a contract of insurance is required to agree that no officer or agent or other representative of the company shall have power to waive any provision or condition of the policy, except such as by the terms thereof may be subject of agreement indorsed thereon, and, as to such provisions and conditions, the waiver must be written upon or attached to the policy; and he specially covenants that he will not claim any privilege or permission unless it be in writing."

The policy was held to be void.

In Walsh v. Insurance Co., 73 N. Y. 5, a general agent of the defendant was notified of a vacancy in the insured building, and asked to consent thereto, which he did, and, upon being asked if it was necessary to have the consent indorsed on the policy, replied that it was not, that he had indorsed it upon his policy book, and it was all right. The agent did enter the fact in his policy register, but made no report to the company. The court held that the evidence failed to show a valid consent or waiver of the condition, as the mode of giving consent was specified in the policy, namely, an indorsement upon the policy, and the power of the agent was limited to that method; that the oral consent was an act in excess of the known authority of the agent; and that the provision of the policy was designed to protect the company

against collusion, fraud, and the danger and uncertainty of oral testimony. The policy was held to be void.

In Messelback v. Norman, 122 N. Y. 578, 26 N. E. 34, the building became vacant, and the defendant's agent was notified. He said: "All right;" that he "would stop and fix her policy, so that it would be all right, providing it [the house] was vacant." The court held that there was no evidence that the agent had power to waive by conduct or in any way except as specified in the policy, and that was by subsequent indorsement upon it. The court held that the policy was void.

In Baumgartel v. Insurance Co., 136 N. Y. 547, 32 N. E. 990, a standard policy was issued, and it appeared that other insurance was procured by the plaintiff, who notified the agent who had issued the policy. The agent replied: "All right; I will attend to it." It did not appear that the plaintiff had the policy in suit with him at that time, or that he afterwards applied to the agent for written consent to other insurance. It was held that the knowledge of the agent did not satisfy the condition of the policy; that the statement of the defendant's agent did not amount to a waiver of the condition, or authorize the application of the doctrine of estoppel; and that the policy was void. The court held, also, that the agent had power to give consent only in the manner prescribed by the policy; that—

"At most, the language of the agent amounted to nothing more than his personal promise to do something in the future, and neither he nor the company could be held in default, with respect to such promise, until the plaintiff had presented the policy to him, and requested him to make the indorsement. * * * There was no statement of an existing fact upon which the plaintiff relied to his prejudice, and which it would be inequitable to permit the other party to deny. Grant that there was a promise by the agent to make the indorsement on the policy; still the plaintiff never presented the policy to him, or asked him to make it."

It was admitted that the agent had power to indorse the consent on the policy, and that the promise was within the fair scope of his powers; but the court added that—

"The act which was necessary to continue the policy in force was never performed, and the conversation between the plaintiff and the agent imported nothing more than an understanding that at some future time the plaintiff would produce the policy, and the agent would make the necessary indorsement. If the plaintiff understood by what was said that the agent would at some time seek him out, and give the written consent in the manner required, the company would not be responsible for the neglect of the agent in that respect."

The policy was held to be void.

In Baker v. Insurance Co., 43 N. Y. 283, the court recognized the doctrine of estoppel as applicable to a similar question, but held that there was no question of estoppel in the case, as the party claiming it had full knowledge of the facts, and that every element of estoppel was wanting. The court adopted with approval the definition of Cowen, J., in Dezell v. Odell, 3 Hill, 215, 219, that estoppel in pais is an admission or statement by one individual intended to influence the conduct of another with whom he is dealing, and actually leading him into a line of conduct which must be

prejudicial to his interests, unless the party making the admission or statement but cut off from the power of retraction.

In the case of Woodside Brewing Co. v. Pacific Fire Ins. Co., 11 App. Div. 68, 42 N. Y. Supp. 620, this court had under consideration a question upon a state of facts involving a similar policy, where the insured premises were sold under a judgment in a foreclosure action, notice of the existence of which had been given to the agent of the company; and the court held the policy to be avoided.

We think the present action is not controlled by the rule stated in Manchester v. Assurance Co., 151 N. Y. 88. 45 N. E. 381, upon which the plaintiff chiefly relies. In that case, one Strait, owner of certain property, obtained insurance thereon, and subsequently sold the property to Mrs. Manchester, and then notified the general agents of the company, and requested them to go to the bank by which the policy was being held as mortgagee, and make the necessary indorsement thereon, which they agreed, but failed, to do. The court held that, as the agents had authority to make the proper indorsements on the policy, they had the right to make a preliminary contract therefor; that such a contract was made, and was based upon a sufficient consideration; that it was possible that the plaintiff was prevented thereby from obtaining other insurance, by reason of his reliance on the promise; and that the case fell within the principle on which the doctrine of estoppel is founded; and that the defendant was precluded from claiming a forfeiture on the ground of the absence of such indorsement, or from insisting that there was a want of consideration.

The court, on the evidence, in the case at bar, found that the plaintiff notified the agent, who had full power and authority to act for the defendant in all matters concerning the policy, that he had mortgaged his stock, and wanted him to do what was necessary to keep the policy good; that the agent promised and agreed to do so, at both the first and second interview; that no notice was given by the defendant to the plaintiff that his policy was not good, or was rendered void by the giving of the mortgage; and that the company assented to the continuance of the mortgage and the policy. The question therefore occurs whether the action falls within the principle of estoppel adverted to in Manchester v. Insurance Co., supra. There the policy was not in the possession or under the control of the assured. Here it was actually in his possession. The testimony is that the agent was notified of the mortgage, and was asked to "see to the policy, and have it all right. He said he would do it. He took out a piece of paper, and wrote something on it. * * * He put it in his pocket, and said he would do it." Later the plaintiff asked him if he had attended to the matter. He said he had not, but would right away,—the next day. The distinction, however, between the case just cited and the present one is very clear. The policy being in the possession of the plaintiff, he knew that no indorsement was made upon or writing added or attached thereto. He knew, or, under the decisions cited, was bound to know, that the power of the agent was limited to the precise terms stated in the policy; that the

provisions of the policy as to mortgages could be waived only by such indorsement or addition; and that no such indorsement or addition was made. He knew that the policy was not asked for by the agent, nor presented by himself for alteration. He had no right to rely upon the promise of the agent, and therefore cannot be said to have done anything, or failed to do anything, in the way of procuring other insurance, or otherwise, in reliance on such promise of the agent. The doctrine of estoppel, therefore, cannot be invoked by him in the present action.

The policy, however, was divisible. It was issued for the gross sum of $2,400, and contained the clause:

"In case of loss, no horse to be valued to exceed $150, no ox to be valued to exceed $70, and no cow to be valued to exceed $50, and no one of young cattle to exceed $25, and no sheep to exceed $5."

It is evident that it was within the intention of the parties that each class of animals and each animal of each class was to have a value beyond which the company should not be liable. As a policy is. in case of doubt, to be most strongly construed against the insurer (McMaster v. Insurance Co., 55 N. Y. 222), the protection which, by the terms of the policy, it provided for itself, may, after a loss, be invoked for the benefit of the assured. It can hardly be supposed that it was the intention of the parties that the policy should cover only the animals on the premises at the date of the policy. The insured might sell stock on hand, and purchase new. The policy was to cover such new stock as a substitute for the old. In other words, it was what is termed a "floating policy," in Coleman v. Insurance Co., 3 App. Div. 65; 38 N. Y. Supp. 986. In Merrill v. Insurance Co., 73 N. Y. 452, the insurance was held to be severable, as there were several classes of personal property, with a stated amount insured on each class. The court held that a breach of the policy on one class did not affect it as to the other. A similar result was reached in Coleman v. Insurance Co., supra.

The first mortgage covered 50 cows and 100 sheep. The second covered 100 sheep, 70 lambs, and 60 cows. Between the time of giving the second mortgage and the fire, the plaintiff sold 10 or 12 cows. There were burned 11 cows, worth $50 each; 2 horses, worth $150 each; a bull, worth $30; and a calf, worth $3. In other words, there were no cows, horses, young cattle, or sheep in the second mortgage, and all of these that were burned were the "subject of insurance," and were insured at the time of the fire. The value of them was $883, and this amount the plaintiff is entitled to recover.

The defendant contends that the policy was voided by the giving of the first mortgage. The court below found, and we have held, that the second mortgage extinguished the first. Even if the policy would have been void and inoperative during the life of the first mortgage, it revived on the death of that mortgage. This principle is well settled in the analogous case of a marine policy, which contains a limit of the waters within which the vessel is insured. If the vessel leaves the limited waters, and is lost, the insurer is not liable, but the liability reattaches on the return of

the vessel to the limits. Hennessey v. Insurance Co., 28 Hun, 98. So here, although the policy was suspended during the existence of the first mortgage, it was revived when that mortgage ceased to exist, by the substitution of the second mortgage. It follows that, the policy being divisible or severable, the plaintiff is entitled to recover the sum of $883.

Judgment reversed, unless the plaintiff stipulates to reduce the verdict to the sum named, and extra allowance proportionately; and, if he so stipulates, the judgment, as modified, is affirmed, without costs of this appeal. All concur.