(24 Misc. Rep. 598.)

WILSON et al. v. TOMPKINS et al.

(Supreme Court, Special Term, Orange County. September, 1898.)

1. RES JUDICATA.
    A judgment, in an action by insured, that the policy is void because of a mortgage executed by him on the property covered by it, contrary to the terms of the policy, is conclusive on the mortgagee.

2. ORDER—CONSTRUCTION.
    A policy was void, as to part of the goods insured, because of a mortgage thereon contrary to its terms. After a loss, insured gave mortgagee an order directing insurer to pay him the insurance on the property burned, as his mortgage interest might appear. *Held*, that the order did not cover moneys due for the loss of the unincumbered property.

Action by George T. Wilson and others against Enoch Tompkins and others on a fire policy. Judgment for defendants.

Wilkinson & Cossum, for plaintiffs.
Walter Farrington, for defendant Enoch Tompkins.
A. M. & G. Card, for defendant William H. Tompkins.
Jones, Townsend & Rugg, for defendant fire insurance company.

HIRSCHBERG, J. The Hartford Fire Insurance Company insured the horses, oxen, cows, young cattle, and sheep belonging to

the defendant Enoch Tompkins against loss by fire, in the sum of $2,400. The policy was in the standard form, containing the provision that the policy should be void if the subject of insurance should be or become incumbered by chattel mortgage. 'On July 18, 1896, Tompkins, being indebted to the plaintiffs in the sum of $1,263.56, executed a chattel mortgage to them upon all his cows, to secure that indebtedness. On November 24, 1896, Tompkins' barn was destroyed by fire, and 36 cows and other stock were burned. Three days after the fire, Tompkins gave the plaintiffs a written order on the defendant insurance company, as follows:

"Amenia, N. Y., Nov. 27, 1896.

"Hartford Fire Insurance Co.—Gents: Please pay to Wilson & Eaton, of Amenia, N. Y., as their mortgage interest may appear, the insurance on cows burned on the night of November 24, 1896, in my barn; they (said Wilson & Eaton) having a chattel mortgage on said cows.        Enoch Tompkins."

This order was delivered to and retained by the insurance company. The insurance company, however, denied its liability on the policy; and an action was brought by Tompkins to enforce it, which resulted in a judgment in his favor, July 27, 1897, for $2,393.70, being the entire value of the property destroyed, and the costs. On appeal the insurance company succeeded in reducing this judgment to $883. See Tompkins v. Insurance Co., 22 App. Div. 380, 49 N. Y. Supp. 184. On the trial the court held that the forfeiture clause in the policy had been waived by the company. The appellate court held that no waiver was proven, and that the policy was accordingly void as to all mortgaged property, but that, being a floating policy, it was good as to property acquired after the giving of the mortgage, and therefore not covered by its terms. This the court held included 11 cows acquired by the defendant Enoch Tompkins between the execution of the mortgage and the fire. On this trial the defendant Enoch Tompkins testified that among the 36 cows burned were 11 which he had acquired after the mortgage, viz. 8 from Smith, 2 from Barton, and 1 from Laughlin. The cows were valued at $50 each. The plaintiffs claim $550 of the insurance money, by virtue of the order or equitable assignment above; and the defendant William H. Tompkins claims all the insurance money, by virtue of an assignment of the policy and judgment dated August 1, 1897.

I think the decision of the appellate division is binding upon and concludes the plaintiffs,—if not by way of estoppel, at least by way of authority. The principle of the decision determines the fact that, of the 36 cows burned, but 11 were insured at the time of the fire, and that these 11 were only insured because they were not included in and covered by the plaintiffs' mortgage. What, then, is carried by the written order? It directs the insurance company to pay the plaintiffs, as their mortgage interest may appear, the insurance on cows burned; they having a chattel mortgage on said cows. It is not an absolute and unqualified order to pay the insurance on cows burned, but on cows burned, mortgaged and insured. At the time both parties doubtless believed the entire loss would be recovered from the insurance company, and that the amount recovered for the cows burned would largely exceed the plaintiffs' claim. The order

was accordingly so worded as to give to the plaintiffs, to the extent of their debt, the insurance money which represented and stood in place of the cows covered by the mortgage and burned. In other words, it was the insurance money on cows in which the plaintiffs had an interest as mortgagees, which money was to be given to them because, and to the extent, of their mortgage interest only. It turns out, however, that there is no such insurance money. There is insurance money on cows burned, but they are other cows, not in the mortgage, and in which the plaintiffs have no mortgage interest. I cannot read the order so as to embrace this money without destroying all the qualifying words, and reducing it to an absolute order to pay the plaintiffs' claim generally from money received from insurance on cows. This would be contrary to familiar rules of construction by which the whole document is to be read, giving effect so far as possible to all the words. The order is, in effect, the same as though it read, "Please pay Wilson & Eaton the insurance on cows burned covered by their chattel mortgage, to the extent of their mortgage interest." There being no insurance on such cows, it follows that there is no such fund as the parties contemplated.

The plaintiffs' complaint must be dismissed, and judgment rendered in favor of the defendants, the terms of which will be settled on notice. Ordered accordingly.