GENERAL CONTRACTING CO. v. JONES et al.

(Supreme Court, Appellate Division, Fourth Department. May 21, 1901.)

1. CONTRACTS—ACTION FOR BREACH—DEFENSES.

B., who held a city street cleaning contract, procured plaintiff to do the work, who assigned the contract to defendants, under an agreement contemplating the cancellation of the agreement between plaintiff and B., and the substitution of a new contract, substantially like it, between defendants and B., for a less sum, which agreement also provided that, in case of defendants' default in payment of the difference between the price reserved in plaintiff's contract with B. and the contemplated contract between B. and defendants for 60 days, defendants were to pay him a named sum per year until the expiration of the contract. B. refused to surrender his contract with plaintiff, but afterwards made a new contract with defendants for the same price for which defendants agreed to do the work for plaintiff, whereupon plaintiff sued to recover the liquidated sum specified in his contract. *Held*, that B.'s refusal to sur-

render the contract with plaintiff and accept a contract from defendants. was sufficient justification for defendants' breach of their agreement with plaintiff.

2. SAME—ESTOPPEL.

    The recital in plaintiff's contract that plaintiff's contract with B. had been canceled could not estop defendants from asserting the contractor's. refusal to cancel as a defense, since both of the parties knew that such. contract had not been canceled as recited.

     Adams, P. J., dissenting.

Appeal from trial term, Erie county.

Action by the General Contracting Company against Claude C. Jones and another. From a judgment in favor of plaintiff, defendants appeal. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, and. WILLIAMS, JJ.

Edward E. Coatsworth, for appellants.
Adolph Rebadow, for respondent.

SPRING, J. On the 1st day of July, 1898, Henry P. Burgard entered into a written agreement with the city of Buffalo to clean its streets for the term of five years. On the 7th day of October thereafter an agreement was executed by Burgard and the plaintiff whereby the latter agreed to perform this work, receiving therefor 31¾ cents per great square of 10,000 feet of stone pavement, and 21¾ cents for the like space of brick and asphalt pavements. Burgard retained out of his compensation from the city 1¾ cents for each of said squares, and that sum represented his profits during the performance of the work by the plaintiff. In January, 1899, negotiations by letter were had between the plaintiff and the defendants,. who were then co-partners engaged in business in Indianapolis, Ind., with reference to the transfer of its rights under its agreement, and the purchase of its property used in cleaning the streets. This correspondence culminated in a letter from the defendants bearing date January 31, 1899, in which they made a specific offer to the plaintiff for the plant and street-cleaning business, which was accepted by the plaintiff by letter dated February 1, 1899. The property and plant were transferred to the defendants February 20, and a written agreement was entered into between the parties February 28, 1899. This agreement provided for the cancellation of the contract between Burgard and the plaintiff, and the substitution of a new one, substantially like it, between the defendants and Burgard. The defendants were to receive for their compensation 31 cents per great square of stone pavement, and 21 cents for brick and asphalt; and payments were to be made on the 20th of each month, as stipulated in the old agreement. This was stated to be "in consideration of the giving up and surrender" by the plaintiff "of its said contract with said Henry P. Burgard, and of other considerations hereinafter expressed," and it made payment by the city a prerequisite to the liability of the defendants to the plaintiff; and the contract, in form,. and in its provisions for the performance of the work and the man-

ner of payment, was intended to conform to the one made between the city and Burgard. It further provided that "Burgard is assenting to the proposed arrangement as aforesaid, and  *  *  *  has accepted a cancellation and surrender of the contract between him and the party of the first part herein [the plaintiff], and at the same time has entered into a new contract of the same or similar character with the parties of the second part [the defendants]  *  *  * for the unexpired period of the term of five years from August 1st, 1898." This statement was incorrect, in that there had been no formal surrender of the contract by Burgard, and no new agreement had been consummated between him and the defendants. He had, however, been cognizant of the negotiations, and had participated and acquiesced in them. The contract also provided that in case of the default in the payment of any installment, and in the event of such default continuing for 60 days, then defendants "promise and agree, presently and immediately, without notice or demand, to pay to the party of the first part a sum and amount of money equal to twenty-seven hundred and fifty dollars per year for the then unexpired time up to August 1st, 1903, which shall be in full of and in lieu of the sums and amounts which said party of the first part would otherwise be entitled to receive during said unexpired period." As already stated, at the time of the execution of the agreement the defendants were in possession of the plant and property enumerated in it, and were at work daily in cleaning the streets. They paid the stipulated sum of $6,000 for the plant and equipment, and carried on their work acceptably and without interruption until March 29th. In the meantime they were endeavoring to induce Burgard to execute the new agreement and cancel the old one, as was contemplated by the parties. This Burgard persistently refused to do. The reason he assigned for his change of front was that he learned the plaintiff was to receive out of the moneys which he paid for doing this work three-fourths of a cent for each great square cleaned. Although the plaintiff was released from all liability to him, it still would have an interest to the extent of the three-fourths of a cent per square. It is not contended that he was informed of this proposed retention until after the execution of the agreement. He was responsible to the city for the faithful performance of the work in conformity to the specifications, which formed a part of his agreement with it. He had given a bond in the penalty of $125,000 to insure to the city the fulfillment of his contract. Complaints for inefficient work were made to him, and in fact the major part of the transactions and communications by the city officials pertaining to the cleaning of the streets was carried on with him. His contract with the city continued in force, and it was of the highest consequence to him that the parties to whom he farmed out the work should be capable, financially and otherwise, of meeting every exigency which could be imposed upon him by the municipality. He had been advised that the reason for the plaintiff's discontinuance of the work was that it could not be done profitably at the stipulated price; and he assented, as he claims, to the new contract upon the assumption that the plain-

tiff was to part with its entire interest to the defendants. He was not, therefore, wholly without excuse in declining to make a new contract with the defendants which carried with it a diminution in rate of three-fourths of a cent per square to the men who were actually charged with doing the work, and to whom he must look for any indemnity for delinquencies which the city might charge up to him. He was satisfied both with the ability and the responsibility of the defendants, and assented to the sale and transfer, but that was before he knew they were receiving less than the plaintiff claimed made the contract unremunerative. Even after this information he offered to enter into the contract with the defendants if the plaintiff would "guaranty the fulfillment of it under these circumstances. If they retained an interest in the contract, they must retain a responsibility in the contract. That is all I ask." This the plaintiff did not do.

Burgard is not a party to this action. The only question is whether his refusal to procure a new agreement with the defendants, and annul the one with the plaintiff, is any defense or justification for the defendants' alleged breach of their agreement in omitting to pay the plaintiff as stipulated. It will shed a little light on this aspect of the case to follow along the narrative of the transactions. Up to the 29th of March the defendants had been paid nothing for the work they had done, and in fact nothing has yet been paid to them for this five-weeks labor. Burgard refused to recognize his liability to them in any way. They then suspended work, and did nothing more until April 10th. They had their plant, machinery, horses, and equipment all lying idle, and for which they had paid $6,000. They had expended five weeks, apparently, in gratuitous labor. The plaintiff was a foreign corporation, and doing nothing to effectuate the agreement with Burgard. With matters in that precarious situation, they offered to do the work for Burgard for 21 cents and 31 cents per great square, respectively, which were the exact prices they were to receive pursuant to their agreement with the plaintiff. Burgard accepted this offer, and, while this arrangement was an oral one, under it they have since been performing the work, and have been paid by Mr. Burgard. There was no feasible course open to them, except the one adopted. If they abandoned the work, a heavy loss would ensue to them, and there would then be no greater immunity from liability to the plaintiff than now exists. The plaintiff claims that they should have required Burgard to execute the agreement. That claim could have been pressed with equal plausibility had they relinquished the work. They chose the plan which enabled them to receive their pay and still left untouched the sum which was the measure of the plaintiff's profit.

It is urged that, because the agreement recited Burgard's assent, it is binding upon him and the defendants as well, and the latter are estopped to shield themselves behind Burgard's declination. Both parties to the agreement knew at the time of its execution that Burgard had not surrendered the old agreement, or entered into the substituted one. They also knew it was essential to the vitality of their

contract that it should receive the approval of Burgard. That was. the marrow of their bargain. If he declined to recognize the defendants' right to claim pay from him if he withheld assent to the agreement, its supporting prop was removed. The burden was no more upon the defendants than upon the plaintiff to obtain its ratification by Burgard. The parties made their contract in good faith, expecting Burgard would join in the plan. Its failure was due to the fact that Burgard was not clinched to it by written agreement before any transfer was made. The responsibility for this failure falls upon both parties. The doctrine of estoppel is ordinarily based upon deception practiced by one party upon another. There can be no application of the principle where both parties possess equal information, and are fully aware of the real situation. Among the elementary rules where an estoppel prevails given in Pom. Eq. Jur. par. 805, are a representation or concealment of a material fact, and also when the facts known to the party estopped are unknown to the one claiming its benefit. As is said in Baker v. Insurance Co., 43 N. Y. 283–289, "There can be no estoppel in behalf of one having full knowledge of all the facts." We should not expect to find any other rule elucidating a doctrine which had its origin in equity. As already stated, so far as the evidence shows, there is no estoppel against Burgard. He based his refusal upon an important fact which it is conceded was not made known to him. In any event, the defendants cannot be held responsible for his refusal to carry out the plan contemplated in their agreement, for they could not compel him to act.

The nature of this action shows the hardship sought to be visited upon the defendants. The plaintiff, while invoking principles of equity, desires the inflexible enforcement of its agreement. It never tendered the price paid for its property, and demanded a restoration. of the plant and machinery, with a view to a renewal of the work by it. It does not now endeavor to recover for the actual damages sustained by it, but its recovery is based upon the sum stipulated in the agreement and for its entire life. That is, the defendants, who have vainly attempted to secure the acquiescence of Burgard to the agreement, must, because of his refusal, be responsible to the plaintiff, upon whom the burden is equally cast, and who was willing to accept his verbal promise as sufficient approval, and that responsibility is to be measured by the gross sum claimed to be liquidated by the agreement.

The complaint alleges fraud and collusion between the defendants and Burgard. The case was not tried on that issue, and the proof fails to support the charge. If true, of course, an entirely different phase would be presented for our consideration. That Burgard should pay the three-fourths of a cent per square to some one is evident. If his refusal to execute the agreement was for the purpose of enabling him to extort this additional sum from these parties, his conduct is without justification. If he is retaining it, awaiting an adjustment of their difficulties, it may be extenuated.

The judgment should be reversed, and a new trial ordered, with.

costs to the appellants to abide the event. So ordered. All concur, except ADAMS, P. J., dissenting in opinion.

Statement of facts by ADAMS, P. J.:

On the 1st day of August, 1898, one Henry P. Burgard entered into a contract with the city of Buffalo to clean the streets of that city at a stipulated price for the period of five years; and on the 7th day of September following he entered into a written agreement with the plaintiff by the terms of which the plaintiff agreed to furnish the requisite men and machinery and to perform all the labor necessary for the performance of his contract with the city at and for the sum of 31¾ cents per great square of 10,000 square feet of stone pavement, and 21¾ cents per great square of 10,000 square feet of asphalt and brick pavement, cleaned and accepted by the board of public works of the city. In the month of January, 1899, the defendants entered into negotiations with the plaintiff to purchase its plant, including its contract with Burgard, in the course of which they wrote the plaintiff, offering it $6,000 for its plant and contract, and also proposed that out of every 21½ cents which they should receive for sweeping a great square of asphalt pavement, and out of every 31½ cents which they should receive for sweeping a great square of stone pavement, they would pay the plaintiff one-half cent, and that, in case the plaintiff could induce Burgard to advance the price above 21½ and 31½ cents per square, they would pay the plaintiff whatever amount was received in excess of those sums, respectively. This proposition was accepted by the plaintiff, but, when the parties met and undertook to reduce the contract to writing, the terms were somewhat modified, and finally, upon the 28th day of February, 1899, a written agreement was entered into wherein, after reciting the terms and conditions of the contract theretofore existing between the plaintiff and Burgard; that Burgard had accepted a cancellation and surrender thereof, and had also entered into a similar contract with the defendants at and for the same consideration and upon the same terms as those specified in his contract with the plaintiff; and that the defendants had paid the plaintiff $6,000 for its plant,—it was provided that: "The parties of the second part [the defendants], in consideration of the giving up and surrender by the party of the first part [the plaintiff] of its contract with said Henry P. Burgard, and of the other considerations hereinabove expressed, hereby promise and agree to pay to the party of the first part on the twentieth day of each calendar month, up to and including August twentieth, 1903, an amount equal to all excess provided in and by their said contract to be paid to said parties of the second part by said Henry P. Burgard over and above the sum of thirty-one (31) cents per great square of ten thousand square feet of stone pavement, and twenty-one (21) cents per great square of ten thousand square feet of asphalt and brick pavement, cleaned by the parties of the second part and accepted by said city of Buffalo, for cleaning so done during the preceding calendar month; and in the event that the parties of the second part make default in the payment when and as due any or either of the installments of money herein provided to be paid by them to the party of the first part, and such default shall continue for a period of sixty days, then the parties of the second part promise and agree presently and immediately, without notice or demand, to pay to the party of the first part a sum and amount of money equal to twenty-seven hundred and fifty dollars per year for the unexpired time up to August 1st, 1903, which shall be in full of and in lieu of the sums and amounts which said party of the first part would otherwise be entitled to receive during such unexpired period." After the execution of this contract the defendants took possession of the plaintiff's plant, and proceeded to employ the same in the performance of Burgard's contract with the city of Buffalo for the cleaning of the streets of that city, and, with the exception of about one month, had been thus continuously engaged down to the time of the commencement of this action; but the plaintiff's contract with Burgard was not transferred to the defendants, nor has Burgard ever entered into a written contract of the same nature with the defendants, but, on the contrary, when asked to execute such a contract, he persistently refused, and placed his

refusal upon the ground that his assent to a sale by the plaintiff of its contract to the defendants was obtained without informing him that the plaintiff had reserved an interest therein, to wit, three-quarters of a cent for each great square of street to be cleaned. The defendants, failing to obtain the contract contemplated by their agreement with the plaintiff, entered into a verbal contract with Burgard by which they undertook to clean the asphalt and brick pavements for 21 cents, and the stone pavements for 31 cents, per great square, and, when called upon to account to the plaintiff for the three-quarters of a cent in excess of these respective sums, refused to pay the same, whereupon, and at the expiration of 60 days from such default, this action was commenced to recover damages at the rate of $2,750 per year, as provided in the contract of February 28, 1898. Upon the trial a verdict was directed in favor of the plaintiff for the amount its due under this provision, and from the judgment entered thereon this appeal is brought.

ADAMS, P. J. (dissenting). This action was obviously brought upon the theory that Henry P. Burgard's refusal to enter into a contract with the defendants upon the same terms and conditions as those expressed in his contract with the plaintiff was the result of a collusive and fraudulent understanding between him and the defendants, by means of which it was designed to prevent the plaintiff from reaping any benefit from the interests which it had reserved to itself in its contract with the defendants. This theory, however, was apparently abandoned during the early stages of the trial, and in its stead another and a more tenable one was adopted. Whatever may have been the real facts of the case, the evidence fails to establish collusion between Burgard and the defendants; but I am nevertheless of the opinion that the conclusion of the trial court was right, and that the judgment appealed from should be affirmed. The complaint alleges that the plaintiff surrendered its contract with Burgard in pursuance of its agreement with the defendants; that Burgard had full knowledge of the execution of such agreement, and consented thereto, and to the surrender of the plaintiff's contract with him in pursuance thereof. This, save in one material respect, is strictly true. Burgard did know of the agreement entered into between the plaintiff and the defendants, and when, on the 28th day of February, 1898, he was requested, in writing, to release the plaintiff from any further liability under its contract, stated to Mr. Lilly, the plaintiff's president: "That is all right now. You can go on and settle up with these folks, and turn over your plant." Mr. Lilly's statement as to what took place during this interview between him and Burgard is uncontradicted, and it is referred to in this connection simply for the purpose of showing that, notwithstanding the plaintiff knew that the contract between Burgard and the defendants had not been actually signed, it was justified in relying upon the representations and assurances contained in its contract with the defendants that, if it had not been, it certainly would be. And thus we are brought to the crucial question in the case, and the one which I think is decisive of the plaintiff's right to recover. It is undisputed that, by the terms of the contract entered into between the plaintiff and Burgard, the former was to receive 21¾ cents and 31¼ cents, respectively, per great square, for cleaning the asphalt, brick, or stone pavements of the city. It is equally certain that it was within the con-

templation of the plaintiff and defendants that the latter, by their contract with Burgard, should receive the same rate of compensation for performing the same work, and in their contract with the plaintiff they expressly declare that Burgard had assented to such an arrangement; that he had accepted a cancellation and surrender of the contract between him and the plaintiff, and had entered into a new contract of the same or similar character with the defendants. It was in consideration of this assurance, fortified as it was by a like assurance from Burgard, that the plaintiff sold its plant to the defendants for $6,000, and surrendered its contract with Burgard, including whatever rights it had acquired thereunder, and paid him the sum of $115 in settlement of an outstanding claim against the plaintiff. It is not reasonable to suppose that the plaintiff would have made this settlement, and parted with its property or surrendered its contract, had it not been assured that a contract had been or certainly would be entered into between the defendants and Burgard by which the compensation for cleaning the streets would be the same as expressed in its own contract; and, such assurance having come in large measure from the defendants, the plaintiff had a right to rely upon it, and, having relied upon it, the defendants should not now be permitted to say that their representations were unwarranted. Dezell v. Odell, 3 Hill, 215, 219, 38 Am. Dec. 628; Tompkins v. Insurance Co., 22 App. Div. 380, 386, 49 N. Y. Supp. 184; Mattoon v. Young, 45 N. Y. 696; Harbeck v. Pupin, 145 N. Y. 79, 39 N. E. 722. It seems that Burgard's only excuse for his refusal to consummate his agreement with the defendants was that he had been kept in ignorance of the fact that the plaintiff was to retain any interest in the compensation to be received by the defendants for cleaning the city streets. This certainly has the appearance of being a mere subterfuge, for I fail to see how this circumstance could by any possibility affect his rights or interest; but assuming that it did, and that in raising such objection he was acting in entire good faith, it would not, in the circumstances of the case, relieve the defendants from their contractual obligations.

As there is little or no dispute respecting the essential facts of the case, I am of the opinion that the learned trial court was entirely right in directing a verdict in favor of the plaintiff, and that the judgment entered thereon should therefore be affirmed, with costs.