Cheshire,
March 7, 1902.

## MARSH *v.* CONCORD MUTUAL FIRE INSURANCE CO.

A fire insurance policy on a " frame mill building and all additions thereto adjoining and communicating, occupied by the assured as a pail shop," may be construed as covering a dry-house and engine-house connected with the main structure by a movable bridge and constituting a part of the plant, if such an intention is fairly collectible from the language of the policy as applied to the subject-matter of the contract, especially when there are no other buildings to which the description can refer.

The admission of incompetent evidence which has no prejudicial effect does not furnish sufficient cause for setting aside a verdict.

DEBT, on a policy insuring the plaintiff against loss by fire to the amount of $1,000, " on frame mill building and all additions thereto adjoining and communicating, including steam-pipes, if any, . . . and occupied by the assured as a pail shop." Facts found, and case transferred from the October term, 1901, of the superior court, by *Young,* J.

The plaintiff is a pail-maker. His plant consists of a frame mill building, a dry-house about twelve feet from the main building, and a boiler-house about two feet from the dry-house. The plaintiff seeks to recover for partial loss by fire in the two latter buildings. The dry-house is divided into four compartments, each of which contains a system of steam-pipes under the floors, which connect with the boiler-house. Steam-pipes also extend from the boiler-house through the dry-house to the main building for heating purposes. There is a movable bridge or walk between the main building and the dry-house, and the latter building is also connected with the boiler-house by a covered walk. The buildings described were all occupied by the plaintiff in his business of manufacturing pails, and were all the buildings he occupied in connection with it. They were commonly known as his pail shop or factory. The agent who wrote the policy was familiar with the premises, the way they were occupied, and the business which was carried on therein. Subsequently the plaintiff obtained other insurance " on frame dry-house building " in the Phœnix Insurance Company ; and in order to identify the property described in that policy, which was introduced by the defendants, the plaintiff was permitted to ask the witness if the frame dry-house mentioned therein was an addition to the frame mill building described in the policy in suit and connecting therewith. To this the defendants excepted. The court found a verdict for the plaintiff, and the defendants excepted.

*Oliver E. Branch,* for the plaintiff.

*Samuel C. Eastman,* for the defendants.

WALKER, J. "In construing insurance policies courts are governed by the same general rules which are applicable to other written contracts. That is to say, it is the duty of the court to adopt that construction of the policy which, in its judgment, shall best correspond with the intention of the parties, which is to be ascertained from the whole instrument, the nature of the property to which the language of the policy is to be applied, the purposes for which property is ordinarily to be used, its situation, and the manner in which it is usually kept." *Stone* v. *Insurance Co.,* 69 N. H. 438, 440. The interpretation of an insurance contract, like the interpretation of other contracts, depends upon the intention of the parties ascertained from legally competent evidence. For sound reasons, universally recognized in the administration of justice, the evidence which is admissible upon the question of the meaning or intention of the parties does not include ordinarily their parol testimony. The point to be determined is, not what they in fact intended or expected to do, but what they in fact expressed as their purpose in the writing presented for interpretation. *Goodeno* v. *Hutchinson,* 54 N. H. 159. It is not the province of the court to make contracts for parties, or to allow them to change, modify, or abrogate their agreements by parol proof that they did not intend to bind themselves by the terms they chose to employ as expressive of their intention. *Preston* v. *Insurance Co.,* 58 N. H. 76; *Tasker* v. *Insurance Co.,* 59 N. H. 438, 445. Whether or not the plaintiff understood that the policy in suit covered the dry-house and the boiler-house, must be ascertained, not from his present recollection of his intention, or from his correct or erroneous conception of the extent of the policy at a time subsequent to its date, but from the policy itself as applied to the subject-matter of the contract. If the fact were established that subsequently he obtained insurance upon the dry-house, assuming that it was not covered by the defendant's policy, it could have no more legitimate bearing upon the issue of the parties' intention when they executed the contract, than his present assertion or contention that it was included in the policy in suit. *Nutting* v. *Herbert,* 35 N. H. 120, 126; *Alcutt* v. *Lakin,* 33 N. H. 507.

The policy purports to insure the plaintiff against loss by fire " on frame mill building and all additions thereto adjoining and communicating, including steam-pipes, if any, . . . and occupied by the assured as a pail shop." Whether in the strictest sense of

the terms the dry-house and the boiler-house could be said to be
"additions" to the principal building, and if so, whether they
were "adjoining and communicating" additions to that building,
may suggest discussions of the technically correct use of language,
in which it is not often useful for the court to indulge.   The
question of the grammatical propriety of the language is not
before the court.   The question for decision is: What is the
meaning of the language employed in view of the apparent pur-
poses of the parties, the situation and uses of the property, and
the nature of the contract evidenced by the policy?   The plaintiff
was a pail manufacturer.   He owned one large building and two
smaller ones located a few feet away.   All the buildings were used
by him in the prosecution of his manufacturing business, and
constituted his manufacturing plant.   Each was a necessary part
of the whole, which was "occupied by the assured as a pail shop"
or manufactory.   The frame mill building was not used inde-
pendently of the smaller buildings, and without the additional
buildings it did not constitute the pail shop.   In view of the
dependent uses of all the buildings in the manufacture of pails,
the word "additions" was not an inappropriate designation of
the two smaller ones; and for the same reason the qualifying
words "adjoining and communicating," though perhaps unneces-
sary, were evidently intended to designate such additional build-
ings as were necessary appurtenances to the main building in the
manufacture of pails.   They were "adjoining and communicating"
buildings, because they were within a few feet of, and next to, the
mill building, and because their common use in the business made
it necessary that some communication or connection should exist
between them and the mill building.   If they had not been in
common use with the mill building,— if, for instance, they had
been used for stores or dwelling-houses,— the evidence of the
meaning of these terms in the policy would be less convincing.
The parties, knowing the relative location of the buildings and
their interdependent uses, were guilty of no great perversion of
language in designating the smaller buildings as "adjoining and
communicating" with the larger building.   The word "communi-
cating" alone does not convey a definite meaning.   There are
many senses in which communication may be said to exist, as by
telegraph, telephone, or conversation, between individuals, or by
physical contact, or apparent uses, between inanimate objects.
The context, purposes, and circumstances in view of which it is
used must be resorted to to determine its significance in a partic-
ular case.   *Kendall* v. *Green*, 67 N. H. 557, 562, 563.   Nor does
the literal meaning of the word "adjoining," when used in a con-
tract or statute, exclude all other evidence of intention and of the

subject-matter involved. If it is apparent it was used in its literal and restricted sense, or if there is no evidence indicating its use in a different sense, the court might not be justified in giving it some other or more comprehensive meaning. In a criminal statute, the meaning of " adjoining " may properly be determined by the legislative purpose requiring a strict construction, such as was applied in *State* v. *Downs*, 59 N. H. 320. See, also, *Rex* v. *Hodges*, Moo. & M. 341. But when it is apparent from the context that its literal meaning would defeat the intended purpose, it must be assumed that the word was used in a different sense. *Moore* v. *Insurance Co.*, 64 N. H. 140, 142 ; *Shaw* v. *McGregory*, 105 Mass. 96, 100. " A rigid adherence to the letter often leads to erroneous results and misinterprets the meaning of the parties." *Reed* v. *Insurance Co.*, 95 U. S. 23, 30.

The fact that there was a movable bridge between the mill building and the dry-house, as well as the fact that steam-pipes made a physical connection between the buildings, is evidence of some weight, though perhaps not alone sufficient, that the parties' intention when the contract was made was as above indicated. *Marsh* v. *Insurance Co.*, 70 N. H. 590. But any doubt that might remain upon the evidence thus far discussed is removed by the consideration that if the dry-house and the boiler-house are not the " adjoining and communicating " additions intended, this language can be given no force or significance ; for there were no other buildings or additions to which it could refer. It is unreasonable to assume, except from necessity, that language used by parties in a written contract was not intended to express an intelligible idea, or that they employed language having no application or reference to the subject-matter of the contract. No such necessity exists in this case, and the language referred to cannot be rejected as surplusage. It is susceptible of a reasonable construction based upon all the competent evidence in the case, and that construction found as a fact the court is bound to enforce.

If the testimony of the defendant's witness on cross-examination — that the dry-house was an addition to the mill building — was incompetent, it was harmless, The trial justice having ruled adversely to the defendant upon the construction of the contract, its rights were fully protected by the exception, and the admission of the testimony upon any ground presents no reversible error. *Wait* v. *Association*, 66 N. H. 581.

*Exceptions overruled.*

CHASE, J., did not sit : the others concurred.