CITY OF GULFPORT *v.* NICHOLAS STRATAKOS.

[43 South., 812.]

1. SUNDAY. *Desecration. Fruit stand. Code 1906, § 1367. Merchant.*

   The keeper of a fruit stand is a "merchant, shopkeeper or other person" within the meaning of Code 1906, § 1367, prohibiting the keeping open of stores on Sunday for the purpose of disposing of any wares, merchandise, goods or chattels.

2. SAME. *Necessity. Charity. Merchandise.*

   The sale of fruit is not a work of necessity or charity; and fruit is merchandise within the meaning of the Sunday law.

FROM the circuit court of Harrison county.

HON. WALTER A. WHITE, Special Judge.

Stratakos, the appellee, was prosecuted and convicted in the police court of Gulfport for violating the Sunday law in that he kept open his place of business, a fruit stand, and did therefrom sell fruit on the Lord's day, commonly called Sunday, contrary to an ordinance of the city making all misdemeanors under the penal laws of the state an offense against the municipality. The fruit merchant appealed from the con-

viction to the circuit court, where upon an agreed statement of facts he was acquitted, and the city of Gulfport appealed to the supreme court. The facts are stated in the opinion of the court.

*John L. Heiss,* for appellant.

In all Christian nations Sunday, commemorating as it does the resurrection of Christ, has been regarded with veneration, and laws controlling the observance of same have in all instances been enacted. In England Sunday laws more or less stringent have existed from a very early period. In the year A. D. 1678, an act was passed in England, which has served as the foundation of all the laws that have since been enacted both in England and America. It provided that "No tradesman, artificer, workman, laborer, or other persons whatsoever shall do or exercise any worldly labor, business or work of their ordinary calling upon the Lord's day, or any part thereof (works of necessity and charity excepted) and that no person or persons whatsoever shall publicly cry, show forth or expose to sale any wares, merchandise, fruit, herbs, goods or chattels upon the Lord's day or any part thereof." That is the law which has been in force in England and America practically all of the time since that date, and with no considerable changes is found upon our statute books to-day.

We do not believe the defendant can successfully contend that he is not a merchant or shopkeeper; but if he should so contend, then he must admit that he is included in the terms "other persons" which term means persons *ejus generis* with the first mentioned. We believe that the law contemplates every character of business where goods, wares and merchandise are traded, bartered, sold or bought, or offered for such purpose, and that the only exception to the operation of the law intended by the legislature was named, to-wit, the pharmacy or drug store.

Does the term wares and merchandise, goods and chattels

used in the statute, comprehend in its significance, the stock of fruit in a fruit stand for sale to the general public? It seems to us, that no words of more general significance could be used than those used in the statute, and that they unquestionably comprehend every article of every description whatsoever that constitutes the whole, or a part of the stock in trade of a store or shopkeeper. If that be true, then the defendant has been guilty of a violation of the city ordinance.

It seems to us that the application of the principle of one of the primary maxims of interpretation, that the express mention of one thing implies the exclusion of all others will greatly aid in the interpretation of the law above quoted. Had the legislature intended that fruit shops should remain open on Sunday, and the stock of fruits sold to whomsoever desired to purchase, then such shops would surely have been included with the exceptions named, to-wit, the meat market, the ice house, and the drug store, etc.

Since the keeping open of a fruit stand on Sunday for the sale of fruit is not one of the exceptions named in the law, specifically, is it a work of necessity or charity? There is no element of benevolence or charity in such labor, or occupation, nothing to work to the good of an individual, or a number of people who stand in the need of assistance and it cannot be considered a work of charity. The alternative for us then is to consider the matters charged as being a work of necessity. And such indeed was the position of opposing counsel. They set up the defense that it was a work of necessity, and vigorously defended that position so far as they could by mere assertion, but not being able so far as we have been able to see, to offer anything in support of their contention. It is to be remembered that the offense charged is that the defendant kept open store (a fruit stand) for the purpose of selling fruit without any mitigating circumstances, or features that would make it a peculiar case. That being true, it cannot be that the article dispensed is necessary to the public;

as for instance, medicine is necessary. The vocation cannot be deemed necessary; as for instance, the work of a physician is necessary. But it is claimed that in order to the preservation of fruit, and to prevent serious damage by decay, it is necessary to sell same, and to keep the shop open Sunday. The legislature surely did not so view it. The butcher shop whose products are subject to decay, was specifically excepted from the provisions of the law. If the sale of beef were a necessity would the legislature have had cause to name the exception? Evidently the legislature did not so view the sale of beef on Sunday. The mere fact that the product is perishable, does not constitute the sale of same a necessity within the purview of the law. In *State* v. *Goff,* 20 Ark., 289, the defendant's grain was wasting from overripeness; he was too poor to buy an implement with which to cut it, and could borrow none until Saturday evening. He cut his grain on Sunday to save it. It was held that such work was not of necessity. Again, in the case of *State* v. *Knight,* 29 W. Va., 242, it was held that the killing of an animal, whose horns became broken, to save meat which it was feared would become fevered was not a work of necessity.

There are numerous cases which, while not exactly parallel, are offered to lend such light as they have to the question in issue. In the case of *McGrath* v. *Merwin,* 112 Mass., 267, it was held that the cleaning out of a wheel pit on Sunday, for the purpose of preventing the stoppage on a week day of mills which employed many hands is not a work of necessity or charity. The mere fact that loss follows the enforcement of the law against Sunday violation does not make the law inoperative as to that class of cases. If such were true then in nearly every instance it might be said that the enforcement of the statute works a loss, and the law would be practically nullified.

The work of a barber on Sunday is not a work of necessity, and has been so held in the case of *People* v. *Bellet,* 99 Mich., 151, *Ex parte Kennedy,* Texas Court of Criminal Appeals, 51

L. R. A., 270; and *State of Utah* v. *Henry Sopher,* 60 L. R. A., 468, and in many other cases too numerous to cite.

The selling of cigars on Sunday is not a work of necessity as held in *Mueller* v. *State,* 76 Ind., 310.

In the case of *Arnheiter* v. *State of Georgia,* 58 L. R. A., 392, it was held that the sale of meat by a butcher on Sunday was not a work of necessity or charity. This bears out our contention, that the mere fact that the goods are subject to decay does not place it within the exceptions contemplated by the law.

The business of trading, bartering, selling or buying goods, wares and merchandise is labor within the meaning of the law regulating the observance of Sunday, as held in the case of *Cincinnati* v. *Rice,* 15 Ohio, 225.

We have been unable to find any case where the question of the sale of fruit on Sunday is tested, probably because the results were so obvious, in that the violation of the law is so apparent, that it has not been questioned save in the present instance.

*Alexander & Alexander,* and *George B. Power,* on same side.

Whether viewed from a moral, religious or a practical point of view, time has demonstrated that one day out of seven should be set apart for worship or for rest—to allow those who are inclined to worship to do so without being disturbed by the distractions incident to days of business—to allow those who are inclined to rest to do so without disturbance on the part of others; the law compels no man to worship, but the law sets apart one day out of seven on which he can worship and compels others to observe that day, at least, to the extent of not interfering with the rights secured to those who worship; the laws says to a man that he may cease from his business one day out of seven either for worship or for rest and that his neighbors and competitors must cease from their business on the same day. Ordained by the Almighty, the Sunday Law

has come down to us through the ages; is old as Time itself; is as reasonable to-day as it was when God rested from His labors.

The Sunday Law is on our statute books and the rights of those who would observe the Sabbath, demand that all others be compelled to observe it.

Section 1367 of the Code of 1906 provides that "a merchant, shopkeeper, or other person, shall not keep open store, or dispose of any wares or merchandise, goods or chattels on Sunday or sell or barter the same, etc."

(1) Was Stratakos a merchant? We think so clearly.

"Merchant is defined by Webster to be one who carries on trade or who traffics; who buys goods to sell again; any one who is engaged in the purchase and sale of goods; a trafficker, a trader." Words & Phrases, vol. 5, p. 4482.

"A merchant is a dealer in goods, wares and merchandise, who has the same on hand for present delivery." *Ib.*

"The term 'merchant' embraces all who buy and sell any species of movable goods for gain or profit." *Ib.*

"The term produce dealer applies to a person engaged in the business of buying and selling fruits, butter, eggs, poultry, and produce. Such a dealer is a merchant, within the meaning of the Kansas City charter, authorizing the council to license merchants." *Ib.*, p. 4487.

(2) If not a merchant, in the usual acceptation of that term, was he not a shopkeeper?

A shopkeeper differs from a merchant in that he is a small dealer. Words & Phrases, vol. 5, p. 4487.

"Webster defines the word 'shop' as follows: 'A building in which goods, wares, drugs, etc., are sold at retail, etc.'" *Ib.*

"Worcester defines a shop as a place, building or room in which things are sold; a store." *Ib.*

(3) Did Stratakos "keep open store" on Sunday? We think he did.

"The word 'store' is employed in § 585 of the Code to

designate a place where goods are sold. Although goods are usually kept for sale in a house, it is not true that their being kept in a house is necessary to constitute a store. Therefore, the fact that the appellant did not keep his goods in a house is not decisive of his liability to a privilege tax." *Folkes* v. *State,* 63 Miss., 83.

"The purpose of the statute is to impose a tax on every place where goods are deposited and sold by a dealer engaged in buying and selling goods." *Ib.*

We can find no other provision of the Code for taxing a. fruit stand than is contained in § 3872 of the Code of 1906, which imposes privilege taxes on "stores."

"The word 'store' means a place where goods are kept on deposit, especially in large quantities—a warehouse; and also, a place where goods are kept for sale in large or small quantities. . . . Until the legislature undertakes the work of classification of stores generally, we must hold the generic term used in the Code to embrace every species of store not otherwise particularly named and taxed. *Pitts* v. *Vicksburg,* 72 Miss., 181, s.c., 14 South., 418.

The term "fruit stand" must necessarily mean a place where fruit is sold, if it means anything at all.

(4) If not a merchant or a shopkeeper, was not Stratakos some "other person"? If not guilty of keeping "open store" was he not guilty of disposing of "wares or merchandise" or of "selling or bartering the same." We respectfully submit that, under the agreed statement of facts he was. We shall not even discuss whether or not fruits are "wares or merchandise, goods or chattels." It needs no discussion.

Clearly Stratakos was guilty of a violation of the "Sunday Law" as it is contained in sec. 1367, as he was neither an apothecary nor a druggist, the only exceptions made in that section.

Can he escape under any exception contained in sec. 1366? We do not see how he can.

He was not engaged in railroad, steamboat, telegraph, telephone or street railway work. The opening of his fruit stand and the selling of fruit did not require the discharge of any of "the ordinary household offices of necessity."

Certainly, it can not be urged that the opening and keeping open of his fruit stand and the selling of fruit was an "act of charity"—at least fruit dealers are not usually in business for "sweet charity's sake," and there is nothing in the record to show that Stratakos was any exception.

Nor can it be urged with any reason that there is any necessity for keeping open a fruit stand and selling fruit on Sunday. We take it that the word "necessity" means public necessity—the doing of such things as the public needs demand; the exceptions contained in the two sections unmistakably give it that meaning; one cannot anticipate illness from Saturday night to Sunday and provide himself with such drugs as he may need on Sunday; for a large part of the year in this state one could not keep either ice or meat over from Saturday to Sunday, unless he converted his refrigerator into a cold storage plant; there is some reason for allowing the specified and designated articles to be sold on Sunday. But, if fruit is needed for Sunday's menu, it could with all safety, and with no danger of spoiling, be purchased on Saturday.

*Barrett & Taylor,* for appellee.

The prosecution is under §§ 1366 and 1367 of the Code of 1906. These are the general laws regulating the Sabbath observance of the state, in which there are certain exceptions named, as follows: Except it be in the ordinary household offices of daily necessity or other work of necessity or charity —or labor on railroads or steamboats, telegraph or telephone lines, street railways or in the business of a livery stable, meat market or ice house." Our contention is that we come within the exceptions named in the statute, that is to say, that the sale of fruit on Sunday is a necessity.

In *Edgerton* v. *State,* 67 Ind., 538, a question of desecration of Sunday by criminal labor is held to be one of fact. In this case it was held that it was not unlawful in the fall before corn is ripe to haul corn to feed hogs in the field and to feed them on Sunday, it being ordinary practice of good husbandmen to gather the feed daily in the field. Now in the cases at bar, the question of fact was .passed on as stated above. In that case the court said: "The evidence is so clearly insufficient that we cannot approve the verdict." In the case at bar the verdict was as above stated.

"A work of necessity within the meaning of the statute does not mean a physical or absolute necessity, but a moral fitness or propriety in the work done under the circumstances of each particular case may be deemed a necessity, within the meaning of the law." *Ib.* Then the question really is whether the selling of fruit on Sunday is a necessity, or work of necessity, and we contend that it is.

There is no express exception in the statute permitting milk or bread to be sold on Sunday, yet we know that milk and bread as food are necessities to the human race, and in these times the article of fruit has become to be used so generally as to become an article of food of daily necessity, and especially so in this hot climate; so the need of fruit, milk and bread is so closely connected with and so necessary to the ordinary household offices of daily necessity as for the sale thereof to fall within the statute, as much so as the sale of meat or ice.

Again, if the sale of meat or of ice is a matter of necessity, we do not see by what course of reasoning we could arrive at excluding the sale of milk, fruit and bread, so we contend that a liberal construction placed upon the statute that the sale of bread, milk and fruit and other articles of daily necessity are as clearly within the statute as if specifically excepted, as is the sale of meat and ice.

Again, the necessity for anything may grow out of or be incident to a particular trade or calling and yet be a work

90 Miss.—32

of necessity within the meaning of the statute, and so the sale of fruit in this instance is incident to the ordinary household offices of daily necessity and therefore excepted from the operation of the statute; it being always the policy of the law to give a liberal construction to criminal statutes in favor of the accused and to be a crime the thing done has to come both within the letter and the spirit of the law." *State* v. *Austin,* 23 So. Rep., 34.

Now in the coast country, we have large numbers of poor people, as well as rich, who come here to spend Sunday on account of cheap transportation, and the pleasures and benefits to be derived from a day spent here, as well as a great many other transient persons who have no way of keeping fruit should they purchase the same on Saturday for their necessity on Sunday, and so from this viewpoint the sale of fruit on Sunday is a matter of necessity for the people aforesaid.

Fruit is of a perishable nature and in this warm climate is very liable to spoil from Saturday night over to Monday morning. In *Crockett* v. *State.* 34 Ind., 416, the court held that it was not unlawful to turn malt in the process of making beer on Sunday, for the reason that the malt would spoil if it were not turned; and in *Manhattan Iron Works* v. *French,* 12 Abb. (N. C.), 448, the court held that it was not unlawful to operate a smelting furnace on Sunday, and in our state the statute expressly excepts ice houses.

The reason given in all these cases is, as we understand it, that it would result in the loss of their goods in the business or occupation, so, applying the same reasoning, if the fruit be not disposed of, it being a perishable product, loss would be inevitable to the fruit dealer and he must therefore sell his fruit on Sunday as a matter of necessity to his business, as much so as in the cases cited above.

Also, in support of the above, we cite *Wilkinson* v. *State,* 54 Ind., 416, which reads as follows: "Where a person had hauled to market on Sunday his dead ripe crop of watermelons,

which otherwise would have spoiled, it was held that this was a work of necessity within the meaning of a statute prohibiting labor on Sunday, except works of charity and necessity.

Again, the finding of the court in these cases that the evidence introduced, as shown in the agreed statement of facts, was not sufficient to constitute an offense against the ordinances is well supported in the case of *Arkansas* v. *Collett,* 64 L. R. A., 204, the court holding in that case that it was a question of fact as to whether or not what was done, namely, the repairing of a belt on Sunday, was a work of necessity, and they refused to ·disturb the verdict, though they were skeptical on the point of evidence, yet it was an agreed statement of facts, as in the cases at bar.

Counsel for the city cite the case of *State* v. *Goff,* 20 Ark., 289, to show that it was unlawful to cut grain that was wasting from overripeness on Sunday. Now, as is well known, the state of Indiana produces a great deal of grain and the books have numerous cases from that state for prosecutions of the violations of the Sunday Law, but in *Turner* v. *State,* 67 Ind., 595, the court says that the harvesting on Sunday of dead ripe wheat which could not be cut sooner and which might be spoiled by rain if left until a later day is not a desecration of the Sabbath.

In *Carver* v. *State,* 69 Ind., 62, keeping a hotel on Sunday in the same way it is usually kept on a week day is not unlawful. So we find that various jurisdictions place different interpretations upon the so-called Sunday Law, as to the implied exceptions in the statutes.

In answer to the appellant's brief wherein counsel speaks from a religious view of the matter, as well as following the Blue Laws, we beg to cite from the Book of Books in the language of our Blessed Lord, as written in Mark 2:27, "The Sabbath was made for man and not man for the Sabbath."

There is no proof to show that Stratakos had a store or that he kept a store open on Sunday. The furtherest the agreed

statement of facts goes is that he kept his place of business open, naming it as a fruit stand, whereas the affidavits charge that he kept open a store and the affidavits and agreements clearly show that there is a difference between a store and a fruit stand, or else the proof would have been made as alleged in the affidavits, and the court found by its verdict that Stratakos did not keep open a store on Sunday under the evidence, and we do not see how appellant can in the face of its own agreement contend that he did.

MAYES, J., delivered the opinion of the court.

This prosecution was begun in March, 1907, under the Code of 1906. Section 40, par. 2, of the Code, gives a municipality the same right of appeal that is given to the state. The state, or a municipality, may appeal in any case from a judgment acquitting a defendant; where a question of law has been decided adversely to either. The record in this case presents a pure question of law, and nothing else. The agreed facts make a clear case of violation of § 1367 of the Code of 1906, if, as a matter of law, the keeper of a fruit stand is "a merchant, shopkeeper, or other person," within the meaning of § 1367 of the Code of 1906, prohibited from keeping open store, or disposing of any wares or merchandise, goods or chattels, on Sunday, or selling or bartering the same.

It is difficult for us to perceive how the terms of a statute could be broader, or more clearly embrace within its provisions the exact case presented than this one does. The agreed facts show that Stratakos was the owner of a fruit stand, that he kept open his place of business on Sunday, and sold fruit. The sale of fruit on Sunday is not a work of necessity or charity, and any person engaged in the business who keeps open store on Sunday, or disposes of, or sells, or barters, fruit on that day, is clearly guilty of a violation of.§ 1367 of the Code. The statute makes it an offense for any merchant, shopkeeper, or other person, whether that other person be a

merchant or shopkeeper, to do any one of the following things on Sunday, viz.: Keep open store; dispose of any wares or merchandise, goods or chattels; or sell or barter any wares or merchandise, goods or chattels. In our judgment the keeper of a fruit stand is a shopkeeper, within the meaning of this statute, and the keeping open of his stand on Sunday is the keeping of an "open store" within the statute; but, whether this view be correct or not, the statute prohibits any person, whether merchant or shopkeeper, from disposing of any wares or merchandise, goods or chattels, or selling or bartering the same, on Sunday, and the vendor of fruit is clearly the vendor of wares or merchandise, goods or chattels. Fruit is merchandise, within the meaning of the statute under consideration. In the case of *Blackwood* v. *Cutting Packing Co.,* 76 Cal., 212, 18 Pac., 248, 9 Am. St. Rep., 199, in that part of the opinion to be found on page 214 of 76 Cal., page 249 of 18 Pac. and page 201 of 9 Am. St. Rep., it is said: "The plaintiff contends, in the first place, that apricots are not merchandise. A walk through the markets would probably convince him that he is mistaken. It is said, however, that such fruit comes under the head of 'produce.' Very likely it does. But we think that the word 'merchandise' covers all kinds of personal property which is ordinarily bought and sold." This language is used, it is true, in a civil suit; but the language of the statute under discussion in this case justifies the adoption of this definition as applied to it.·

The case of *State* v. *Willingham,* 86 Miss., 203, 38 South., 334, has no application here. In that case an appeal was attempted to be taken by the state from the decision of the judge on a question of fact. The court properly held that this could not be done. In this case the question of law presented, the facts being agreed to and showing a violation of law, is whether or not a fruit vendor is a shopkeeper, or vendor of merchandise, within the meaning of the statute.

*We think the learned circuit judge erred in his holding, discharging the defendant.*