E. H. EMERY & COMPANY, Appellee, v. AMERICAN INSURANCE COMPANY OF NEWARK, Appellant.

EVIDENCE:   Parol as Affecting Writing—Surrounding Circumstances
1   —Ambiguity—Subject-Matter.   Without violation of the ''parol evidence rule,'' evidence is admissible in the construction of a series of writings (a) to show the circumstances surrounding the parties when the writings were entered into, (b) to explain the ambiguity created by the language of the several writings, and (c) to identify the subject-matter of the different writings. So held on the question whether fire insurance policies were concurrent.

PRINCIPLE APPLIED:   Eleven different policies of fire insurance, after specifically naming numerous fruits and vegetables as covered by the policies, continued: "And all other merchandise kept for sale by them . . . and containers of every description."

Another policy was confined to the furniture and fixtures and, after specifically naming numerous articles of furniture and fixtures as covered by the policy, continued: "And all other furniture and fixtures owned by them and used in their business."

A later policy, after naming ice cream machines, ice cream carriers and cans, tanks, testing apparatus, cream, etc., continued: "And all other apparatus and merchandise herein not mentioned used in the manufacture of ice cream, etc." All policies contained a *pro rata* concurrent insurance clause. On the question whether all the policies were in any wise concurrent, held competent for the insured to orally testify: "That the 12 policies were taken out when he was solely in the fruit and vegetable business; that the last policy was to cover the 'ice cream department'—a new venture—because the other policies did not cover it; and that he so told the agent when he secured the last policy; that when the 12 policies were taken out, he had none of the personal property connected with the ice cream department."

INSURANCE:  Fire  Insurance—Property  Covered—New  Business
2 . Venture—Concurrent Insurance.  A policy of insurance on a
distinctive business, even though a specific enumeration of the
articles and things covered by the policy is followed by words of
broad and general meaning, such as "all other merchandise kept
for sale," or "all other furniture and fixtures owned by insured
and used in his business," does not cover property subsequently
acquired and employed, on the same premises, *in a distinctively
new and different business venture.*  Therefore, such a policy can-
not be concurrent with one admittedly covering property acquired
and used in the new venture.

CONTRACTS:  Construction—Ejusdem Generis.  General words used
3   in a contract after *specific* terms will, as a general rule, be limited
in their meaning to things of like kind and nature with those
specifically named.  So held where policies of insurance on a fruit
and vegetable business, after specifically enumerating the articles
and things covered by the policy, continued:  "And all other
merchandise kept for sale," or "And all other furniture and fix-
tures," the holding being that such policies did not cover property
subsequently acquired in a *new* and *different* business.

*Appeal from Wapello District Court.*—FRANCIS M. HUNTER,
Judge.

THURSDAY, JUNE 29, 1916.

THIS action was brought by plaintiff, a copartnership, against the defendant, to recover upon a policy of insurance the sum of $708.53, with interest, for damage by fire which occurred on the 7th day of August, 1912, by the destruction of property described in the policy.  A jury was waived and the case tried to the court upon an agreed statement of facts, with a small amount of oral testimony.  The court held that there was no concurrent insurance which covered any part of the property described in the defendant's policy, and upon this holding rendered judgment against the defendant for the amount agreed upon as the loss on the property, to wit, $708.53, with interest.  The defendant admitted liability to the amount of $358.94, and offered to allow judgment to go against it for that amount.  The appeal is by defendant from

the judgment rendered, or, as appellant puts it, the excessive portion of it.—*Affirmed.*

*McNett & McNett,* for appellant.

*Chester W. Whitmore* and *Tisdale & Heindel,* for appellee.

PRESTON, J.—The petition declared upon a policy in defendant company which covered the property hereinafter described. The answer admitted the issuance of the policy, the fire and the destruction of the property of the kind described, to the amount claimed, to wit, $708.53. No question as to the validity of the policy, the occurrence of the fire, nor proofs of loss, nor amount of loss, is involved. The defense set up in the answer is that defendant was a concurrent insurer upon a portion of the property described and destroyed by fire, and that, to the extent that it was a concurrent insurer, it was only liable for its *pro rata* share of the loss. As appellant states it, the dispute arises upon whether a portion of the property covered by the policy in suit was also covered by the other insurance policies issued by other companies to the assured.

1. E. H. Emery, a member of the plaintiff firm, testified over objection substantially as follows:

1. EVIDENCE: parol as affecting writing: surrounding circumstances: ambiguity: subject-matter.

"I negotiated with Ernest A. Baer, representing the defendant company, in procuring the insurance issued by the defendant. I saw Mr. Baer on the premises and gave him the insurance. I told him I had embarked in the ice cream business; that because my present policies in force on the fruit and vegetable business did not cover this department of the business we were engaging in, I dictated to him the form to be used. He thereafter delivered the policy to me."

Plaintiff then offered as the evidence of the witness that

part of the supplement to agreed statement of facts, wherein it is agreed that E. H. Emery will testify as follows:

"That, at the time each of the aforesaid policies of insurance (except the policy sued upon in this case), was written and took effect, plaintiff was not engaged in the manufacture and sale of ice cream and had no ice cream department and had none of the personal property described in and insured by policy of insurance sued upon in this case, and had or owned no property of like kind or description, and no personal property of like kind or description was kept or situated in or about the premises described in said several policies of insurance (except the policy sued upon) at the time each of them was issued and took effect."

All of this was objected to by defendant as immaterial, and as incompetent because it tended to vary and contradict the terms of the written contract sued upon, and in respect to the kinds and character and classes of property insured and covered by the policy, and also in respect to the description of the kind and character of the property insured by other policies which existed at the time of the insurance of the policy in question, and because there is nothing in the language of the policy in question which describes the kind and character of property covered thereby, and in the policies referred to in the pleadings and stipulation, which justifies the introduction of parol evidence. The objection was overruled, and some of the assignments of error relate to such ruling.

Appellant cites *Kelsey v. Continental Casualty Co.*, 131 Iowa 207, *Phillipy v. Homesteaders*, 140 Iowa 562, *Marsh v. Concord Mut. Fire Ins. Co.*, 71 N. H. 253 (51 Atl. 898), *Union Mut. Life Ins. Co. v. Mowry*, 96 U. S. 544, upon the proposition that no party to an insurance risk can be allowed to testify either what his understanding was or what he was told by the agent in respect to the construction and interpretation of his contract of insurance. And, further, that, in

the absence of fraud or mutual mistake, no representation, promise, or agreement made, or opinion expressed in the previous parol negotiations as to the terms or legal effect of the resulting written contract, can be permitted to prevail either in law or in equity over the plain provisions and proper interpretation of the contract. In support of the last proposition, appellant cites *Connecticut Fire Ins. Co. v. Buchanan,* 141 Fed. 877; *Lumber Underwriters of N. Y. v. Rife,* 237 U. S. 605 (59 L. Ed. 1140); *Kelsey v. Continental Casualty Co.,* 131 Iowa 207, 209—12; *Doolittle v. Murray,* 134 Iowa 536, 546, 554; *Marsh v. Concord Mut. Fire Ins. Co.,* 71 N. H. 253 (51 Atl. 898, 899); *Iowa Business Men's Bldg. & L. Assn. v. Fitch,* 142 Iowa 329, 331—2; *Union Mut. Life Ins. Co. v. Mowry,* 96 U. S. 544 (24 L. Ed. 674, 5); *Deming Inv. Co. v. Shawnee Fire Ins. Co.* (Okla.), 83 Pac. 918, 922, 923; *Liverpool & L. & G. Ins. Co. v. Richardson Lumber Co.* (Okla.), 69 Pac. 936, 937; *Sanders v. Cooper,* 115 N. Y. 279 (22 N. E. 212, 213); *Fawkner v. Smith Wall Paper Co.,* 88 Iowa 169, 173; *Congower v. Equitable Mut. Life & Endowment Assn.,* 94 Iowa 499, 503—5; *Sleight v. Mystic Toilers,* 121 Iowa 724, 728—9.

Appellee does not dispute the propositions of appellant just stated, but contends that the cases do not apply to the facts in the instant case, because in each of the cases cited the writing was full, clear and explicit, and presented no occasion to inquire into the sense and meaning of the terms used.

There is no question about the rule, but there are many exceptions. We think the evidence is competent to show the surrounding circumstances; that the court may read the policy in the same light the parties did, to ascertain their object and see in what sense they made use of the words, and as tending to explain the ambiguity created by the use of the language in the different descriptions in the policies and the riders thereto, appellant's contention being that the different descrip-

tions mean the same thing; also, to identify the subject-matter. It is contended by appellee that the evidence was admissible for the further reason that it is competent to show that the policy in suit was delivered upon the condition and understanding that it cover the ice cream department alone, and that the other policies did not cover such property, and that it would, therefore, be a fraud for the defendant company, having received a premium upon such understanding, to repudiate its actual agreement.

Appellee cites many cases upon the first proposition, among them the following Iowa cases: *Miller v. Mutual Benefit Life Ins. Co.*, 31 Iowa 216, 223; *Boetcher v. Hawkeye Ins. Co.*, 47 Iowa 253; *Williams v. Niagara Fire Ins. Co.*, 50 Iowa 561, 568; *Jordan v. State Ins. Co.*, 64 Iowa 216; *Eggleston v. Council Bluffs Ins. Co.*, 65 Iowa 308, 316; *Thompson v. Locke*, 65 Iowa 429; *Stone v. Hawkeye Ins. Co.*, 68 Iowa 737, 742; *Miller v. Hartford Fire Ins. Co.*, 70 Iowa 704; *Erb v. Fidelity Ins. Co.*, 99 Iowa 727; *Biermann v. Guaranty Mut. Ins. Co.*, 142 Iowa 341, 346; *Cedar Rapids Nat. Bank v. Carlson*, 156 Iowa 343; also Browne on Parol Evidence, Sec. 179; 2 Elliott on Contracts, Secs. 1655, 1508, 1657, 1659, 1517, 1519, 1514, 1515; 9 Encyc. of Evidence, page 370. Some of these cases are to the proposition that, when a soliciting insurance agent issues a policy, having personal knowledge of the conditions of the risk, the company is bound by his knowledge, and that the company will be held to have entered into the contract, having in mind the conditions as they were actually known to the agent, and that parol evidence is admissible to show the knowledge possessed by the agent of the conditions surrounding the risk at and before the time of the issuance of the policy.

On the second proposition, as to the alleged ambiguity, they cite *Davis v. Anchor Mut. Fire Ins. Co.*, 96 Iowa 70; *Eggleston v. Council Bluffs Ins. Co.*, supra.

On the third proposition, as to the identity of the subject-

matter, they cite 1 Elliott on Evidence, Secs. 568, 584, 597, 598, 601, 602; Jones on Evidence (2d Ed.), pages 572, 573; *Eggleston v. Council Bluffs Ins. Co.*, supra.

On the last proposition, they cite *Wells v. Hocking Valley Coal Co.*, 137 Iowa 526; *Sutton v. Griebel*, 118 Iowa 78; *McCaskey Register Co. v. Hall*, 140 Iowa 87; *Ware v. Allen*, 128 U. S. 590.

The *Eggleston* case, supra, is also cited to the proposition that no prayer for reformation was necessary to make the evidence competent. The argument of the appellee is that the evidence is admissible to explain the meaning of the terms "merchandise" and "furniture and fixtures," as used by the parties; that furniture and fixtures for a jail would not call for that class of equipment designed for a church; and that merchandise or furniture and fixtures for a wholesale fruit house would not call for such equipment as designed for an ice cream parlor; that the words "merchandise . . . sacks, crates and containers," appearing in the 11 policies, do not mean the same as "ice cream manufactured and in process of manufacture, and all other apparatus and merchandise not herein mentioned, used in the manufacture of ice cream," appearing in the policy in question; that the parties did not mean the same thing, or they would have used the same language in each instance; and that, because different language is used, there is ambiguity. Appellee does not contend that Mr. Emery could testify as to what the agent told him as to the construction or interpretation of the policy, nor as to what his understanding or intention was.

It appears that plaintiff had been engaged in the fruit and vegetable business and contemplated adding thereto an ice cream department. We think the parol evidence is competent to show that, as a matter of fact, he had no ice cream department until the American policy was issued. In the instant case, the descriptions of the property in the different policies are not the same, but it is appellant's contention that they mean the same, and the stipulation provides that the

descriptions do not cover the same kind or description of property. This presents an ambiguity. Furthermore, on this point, appellant contends that the words "merchandise" and "furniture and fixtures" apply to appellee's stock of fruits and vegetables which appellee then had, and also apply to a stock of ice cream which it did not then have—property concededly not of like kind or description.

It is contended by appellee that, independent of the testimony of Mr. Emery as to the conversation with Mr. Baer, the judgment should be affirmed on the ground that, as a matter of law, the rider of the policy in question did not cover the same property embraced in the other policies, because the general subject of the rider to the 11 policies was the stock of fruits and vegetables as then carried, and the general subject of the rider to the Providence policy was that of furniture and fixtures then existing; because, at the time such policies were issued, the assured had no ice cream department. This is covered by a part of the stipulation heretofore set out in the evidence of Emery; and that part of the evidence or stipulation referring to the fact that, at the time the policy in suit was issued, plaintiffs were not engaged in the manufacture and sale of ice cream, is merely a statement of fact, and clearly admissible.

2. INSURANCE: fire insurance: property covered: new business venture: concurrent insurance.

2. Before proceeding further with the questions as to the construction of the different policies, it would be well, perhaps, to set out the provisions of the different policies. Eleven of them, issued mostly in 1911,—one as late as April, 1912, but all before the policy in defendant company was issued,—describe the property as follows:

"On their stock of fruits and vegetables, to include oranges, lemons, bananas, apples, potatoes, oysters, celery, dates, *and all other merchandise kept for sale by them,* their own, or held by them in trust or on commission or consignment, or sold but not removed, also to include sacks, crates *and containers of every description,* all while contained in the

three story and basement brick building, situate and known as No. 226 and 228 Commercial Street, Ottumwa, Iowa.''

We have italicized the clauses upon which the principal controversy hinges. All these policies contain the clause, ''Other insurance permitted.''

There was another policy in the Providence of Washington, issued in December, 1911, wherein the property is described as follows:

''$1,000 on their furniture and fixtures, to include counters, shelving, partitions, desks, chairs, tables, typewriters, iron safes, stationery, linoleum, gas and electric light fixtures and connections; electric fan and connections, plumbing, gas, coal oil and coal stoves, scales, trucks, tools *and all other furntiure and fixtures owned by them* and used in their business.''

The Providence policy also contained the following clause:

''It is hereby agreed that the insured may obtain other additional insurance in companies authorized to do business in the state of Iowa.''

The description of the property in defendant's policy, which was issued June 7, 1912, is like this:

''$2,500—On ice cream machines, ice cream carriers and cans, scales, mixing tanks, line shaft, shafting pulleys, belting, hangers, electric motors, testing apparatus, milk cans, extracts, raw cream, ice cream manufactured and unmanufactured, and in process of manufacture, and all other apparatus and merchandise herein not mentioned, used in the manufacture of ice cream, all while contained in the three story and basement brick building situated and known as No. 226 and 228 Commercial Street, Ottumwa, Iowa.''

All of the policies, including defendant's, were written on what is known as the Iowa standard form of fire insurance policy, and also contained the following provision:

''This company shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by and expense of removal from premises endangered

by fire, than the amount hereby insured shall bear to the whole amount of valid and collectible insurance covering such property.''

The items for which plaintiff sought to recover in the petition are contained in a part of the agreed statement of facts, as follows:

''That, on the 7th day of August, 1912, while said policy of insurance was in full force and effect, a fire occurred in the building and premises described in said policy of insurance, and the personal property described in and covered by said policy of insurance was damaged and lost by reason of said fire to the extent of $708.53 in value and that said damage and loss was to the following items of property in the following amounts, to wit:

| | |
|---|---|
| ''Ice cream supplies | $281.70 |
| Ice cream freezers and testers | 69.00 |
| Ice cream containers | 175.92 |
| Stock of ice cream | 181.91 |
| Total, | $708.53'' |

Defendant's claim is that, at the time of the fire, the other policies, or 11 of them, upon the property involved in the fire, covered, as they claim, a portion of the property covered by defendant's policy, and that it is only liable for the first item in the account, $281.70, and that it is alone liable for that amount; and it admits that, as to the second item of $69, it is liable for $47.56 thereof, and claims that the Providence Company should have been held for the remainder, $21.44. Of the other two items in the account, to wit, ice cream containers, $175.92, and stock of ice cream, $181.91, it admits liability in the sum of $29.68, and claims that the 11 companies before referred to are liable for the balance of these two items, making a total sum for which defendant admits it is liable, of $358.94.

It was stipulated that:

"In case the court should find that the other policies, listed on page 3, except that of the Providence of Washington, in addition to the defendant's policy, covered the ice cream stock and ice cream containers, then and in such event, it is agreed that the defendant is liable for loss and damage to said items in the sum and amount of $29.68. But in case said other policies are found not to cover ice cream stock and ice cream containers, then defendant is liable for loss and damage to said items in the sum and amount of $357.83."

As to the Providence of Washington policy and as respects the ice cream freezers and testers, it was stipulated:

"In case the policy of the Providence of Washington shall be construed to cover and insure the *ice cream freezers and testers*, then this defendant is liable to plaintiff for loss and damage to ice cream freezers and testers in the sum and amount of $47.56, and if the policy of the Providence of Washington is held not to cover said items, then defendant is liable to plaintiff for such loss and damage in the sum and amount of $69."

It is further contended by appellant that the policies are concurrent, and that, since its policy and all the others contained the provision that "this company shall not be liable under this policy for a greater proportion of any loss on the described property . . . than the amount hereby insured shall bear to the whole amount of the valid and collectible insurance covering such property," and since the property described in the 11 policies and its own policy is exactly the same property, as defendant claims, it is only liable for its *pro rata* share. The contention is that the language of the first italicized clause in the 11 policies before set out includes "stock of ice cream, $181.91," and that the language last italicized in said 11 policies, viz., "containers of every description," includes "ice cream containers, $175.92," set out in the plaintiff's claim; that the clause, "all other merchandise kept for sale by them," includes the stock of ice cream, because, as they say, ice cream is merchandise, within the

meaning of the following clause of the 11 policies: "On their stock of fruits and vegetables, to include oranges, lemons, bananas, apples, potatoes, oysters, celery, dates, and all other merchandise kept for sale by them." And as to the item "ice cream containers, $175.92," they claim it is contained in the following clause in the 11 policies: "Also to include sacks, crates and containers of every description," etc. The item "$175.92, for ice cream containers" is made up of the following items: Cans, $62.50; cans, $5.42; ice boxes, $108.

From this comparison of the clauses found in the policies of the 11 companies, they claim that the items "stock of ice cream" and "ice cream containers" are covered by such policies, and they concede that these items are also covered by the policy in question, claiming that as to these items, the 12 policies are concurrent. Appellant then compares the description of the property in the Providence of Washington policy and the policy in suit as covering ice cream freezers and testers, $69. The language in the Providence policy which defendant claims covers ice cream freezers and testers is this:

"$1,000 on their furniture and fixtures, to include counters, etc., and all other furniture and fixtures owned by them and used in their business."

The claim is that the terms "their furniture and fixtures" and "all other furniture and fixtures" cover the ice cream freezers and testers, and particularly so, the word "fixtures." As to this matter, the agreed statement of facts recites that:

"The meaning of the term fixtures in its ordinary and general use in fire insurance policies, and for the purpose of this case, is hereby defined to include and embrace ice cream freezers and ice cream testers."

Appellant's claim is that all the other 12 policies are concurrent with the policy in suit, upon the authority of the following cases: *Washburn-Halligan Coffee Co. v. Merchants' B. M. Fire Ins. Co.*, 110 Iowa 423, 430; *Corkery v.*

*Security Fire Ins. Co.*, 99 Iowa 382; *Globe Ins. Co. v. Alaska-Portland Packers' Assn.*, 205 Fed. 32 (49 L. R. A. [N. S.] 374 and note); *New Jersey Rubber Co. v. Commercial Union Assurance Co.*, 64 N. J. L. 580 (46 Atl. 777). And they cite authority to the effect that it is not legally necessary, in order to render policies of different companies concurrent, where there is a concurrent clause, that each policy of each company should cover all the property which some of them may cover; that it is sufficient if each covers a part of the property, citing the first three of the above cases, and others. But in the cases cited, there was no question as to a party's enlarging the business or engaging in another department, or what the contemplation of the parties was, other than as stated in the policies themselves.

In support of the proposition that the term "merchandise," or the phrase "all other merchandise," found in the description of the property insured in each of the policies referred to, covers the stock of ice cream, appellant cites *Traders' Ins. Co. v. Dobbins* (Tenn.), 86 S. W. 383; *City of Gulfport v. Stratakos* (Miss.), 43 So. 812; *Blackwood v. Cutting Packing Co.*, 76 Cal. 212.

Counsel also contend that stocks of merchandise in the store or building, at the time of the fire, answering to the description in the policy, are covered, though other and different from the stock on hand at the time of the issuance of the policy, and that subsequent purchases of the class of property insured are covered, citing 7 Am. & Eng. Encyc. of Law (1st Ed.), page 1008 (6); *Mills v. Farmers' Ins. Co.*, 37 Iowa 400, 402; *Beyer v. St. Paul Fire & Marine Ins. Co.*, 112 Wis. 138 (88 N. W. 57, 61); *Hoffman v. Ætna Ins. Co.*, 32 N. Y. 405, 410—12; *Manchester Ins. Co. v. Feibelman*, 118 Ala. 308 (23 So. 759, 764); *Hooper v. Hudson River Fire Ins. Co.*, 17 N. Y. 424, 426; *Peoria Ins. Co. v. Anapow*, 51 Ill. 283; *American Cent. Ins. Co. v. Rothchild*, 82 Ill. 166, 168; *Planters' Mut. Ins. Co. v. Engle*, 52 Md. 468; *Bradbury v. Fire Ins. Assn.*, 80 Me. 396; *Tompkins v. Hartford Fire Ins.*

*Co.,* 49 N. Y. Supp. 184; *Coleman v. Phœnix Ins. Co.,* 38
N. Y. Supp. 986.

This is the rule under the facts of those cases, and we
are not departing therefrom.   Counsel refer to the first of
the cases just cited as a shifting risk, which is defined to be
a policy on what is called a shifting risk—that is, where the
articles composing the subject of insurance are, from the
usages of the business, constantly changing, as a stock of
merchandise, or that of a manufacturer—and covers that
which is on hand at the time of the loss, though none of it
may have been on hand at the time of the underwriting of the
policy, and though nothing be said regarding it therein.

Counsel upon either side cite the same cases and concede
the rule to be to construe the terms of a policy most strongly
against the insurer, and to resolve every doubt or ambiguity
in favor of the assured and against the insurer.   Many author-
ities are cited by counsel on either side on the different propo-
sitions, and we shall not take the space to review the cases.

Appellee contends that the doctrine of shifting risk does
not apply here, because the rule applies only to property
of like general character, kind or description, and that the
ice cream department in the instant case was not kindred to
any line of business that plaintiff was previously carrying.   It
will be noticed that the property in appellant's policy is more
particularly described than in the others, and defendant con-
tends that the other companies should be held under the
more general terms describing the property in the other
policies.

Both parties discuss the doctrine of *ejusdem generis.*   As
stated by one authority, the rule is this: when general words
will be limited in their meaning or restricted to things of
like kind and nature *(ejusdem generis)* with
3.  CONTRACTS:   those specified.   But the same author adds
construction:
*ejusdem*        that it must be borne in mind that the rule
*generis.*       of *ejusdem generis* is not in and of itself a

rule of interpretation, but an aid to interpretation when the intention is not otherwise apparent; that it has no binding force in the construction of a contract, when it is clear that a larger object was in the minds of the parties, to which the more general phrases can distinctly apply. The policies of the 11 companies describe the property as: "Stock of fruits and vegetables, to include oranges, lemons, bananas, apples, etc., and all other merchandise."

We are of opinion that the words "all other merchandise" do not, under the doctrine of *ejusdem generis,* cover loss of ice cream, etc., for the reason that the words "all other merchandise" had reference to the same kind of merchandise —fruits, vegetables, etc. So, too, with the Providence policy, that "furniture and fixtures" in its policy meant property such as desks, counters, shelving, partitions, chairs, tables, typewriters, gas and electric light fixtures, etc. The term "furniture and fixtures" would cover property of like kind, which would not include ice cream freezers and testers, forming a distinctive department installed subsequent to the issuance of such policy, although it may be conceded, and is conceded in the agreed statement of facts, that, in a sense, ice cream freezers and ice cream testers might be considered as fixtures; but, as said, the policies are to be construed as applicable to the facts that existed at the times the different policies were issued, and as contemplated by the parties. What the term "fixtures" may mean generally and standing alone is not controlling. The question is: In what sense were the terms "ice cream freezers" and "ice cream testers" used by the parties in this case under the policy in question? The rule of *ejusdem generis* must yield to the cardinal rule that the contract is to be construed as a whole. The meaning of a clause or sentence may be limited by the sentence preceding it.

Again, we do not see how the rule of *ejusdem generis* is of any aid to appellant, as, under its policy, the last general phrase in the policy or rider is: "All other apparatus and

merchandise herein not mentioned used in the manufacture of ice cream.'' So there is no occasion to limit the subsequent general words ''apparatus and merchandise used in the manufacture of ice cream'' to the previous specific terms ''ice cream machines, etc.'' The specific and general terms alike deal with one subject, ice cream, with which none of the other 12 policies have anything to do or make mention of. The general terms of the policy give way to the specific provisions contained therein. 19 Cyc. 657.

We think it is a reasonable construction to hold that the policies upon a general stock of fruits and vegetables, furniture and fixtures, do not cover a subsequently acquired ice cream department, being property concededly not of like kind or description.

Without discussing appellee's cases more in detail, we simply cite them, stating the propositions. The first is that the general terms ''merchandise, furniture and fixtures,'' etc., are controlled and limited by the specific enumeration and classification which are confined to the ice cream department alone, and which the other policies do not cover. On this, they cite 19 Cyc. 657; *McCluer v. Girard Fire Ins. Co.*, 43 Iowa 349; *Longueville v. Western Assurance Co.*, 51 Iowa 553; *Hewitt v. Watertown Ins. Co.*, 55 Iowa 323; *Furlong & Meloy v. North British & Merc. Ins. Co.*, 136 Iowa 468; *Sawyer v. Dodge County Mut. Ins. Co.*, 37 Wis. 503; *Lames v. Armstrong*, 162 Iowa 327.

Their next point is that appellant may not single out certain words or phrases and say they control; that the rider and policy must be interpreted as a whole; and that as a whole it related to the ice cream department only, and not to the general stock of merchandise, fruits, vegetables, etc., nor to furniture and fixtures in general, citing Elliott on Contracts, Sec. 1514; *Sinclair v. National Surety Co.*, 132 Iowa 549—557.

And again, that the rider to the defendant's policy does not embrace in detail property of like general kind and

description enumerated in the other policies, and that the doctrine of shifting risk, therefore, does not apply, and there is no concurrent insurance, citing *Northwestern Fuel Co. v. Boston Ins. Co.* (Minn.), 154 N. W. 515; *Michel v. American Cent. Ins. Co.*, 44 N. Y. Supp. 832; *American Ins. Co. v. Hornbarger*, 85 Ark. 337 (108 S. W. 213).

We are of opinion that the trial court correctly interpreted the contracts, and the judgment is therefore—*Affirmed.*

EVANS, C. J., DEEMER and GAYNOR, JJ., concur.